Good morning, your honors. Good morning. Tom Monahan for defendant appellant Michael Sharp. I'm going to try to reserve approximately two minutes for rebuttal. I understand that's my responsibility. May it please the court. The district court erred in this firearms case by imposing sex offender conditions of release that constituted greater deprivations of liberty than necessary to promote the goals of supervision, deterrence, protection of the public and rehabilitation. Accordingly, this case should be remanded to the district court for the government either to meet its burden of demonstrating that those deprivations are justified or for those conditions to be vacated. Did the, refresh me now, did the probation off report recommend these conditions? The pre-sentence report recommended them, yes, your honor, and we did file. And the government asked for them at sentencing? Yes, your honor. And did the district judge make any comment about those conditions when he adopted them? The district court made some brief statements indicating that because Mr. Sharp violated his conditions of pre-sentence release that they were largely justified. But the district court did not explain on the record why these non-sexual violations of Mr. Sharp's pre-sentence conditions of release required. That violation was living somewhere where he wasn't supposed to be living, right? And not reporting it or something like that? That is correct, your honor. But he was a convicted sex offender, right? No dispute on that, your honor. I'm sorry? No dispute on that. What was the offense, the sex offense for which he was convicted? Battery with the intent to commit a serious felony from 1998, I believe, your honor. Did that involve, you know, the conviction involved a minor? It's not clear from the record, your honor. Although in subsequent violations it is indicated that it appears to be that it was a minor, but it's not entirely clear. It was not, the offense itself was not a child sex offense. It was not charged as a child sex offense. That is absolutely correct. It was about 10 to 12 years old, the conviction. By the time of sentencing it would have been, yes, about 11, 12 years old. And there was also an incident in which your client supplied alcohol and marijuana to minors. Is that correct? A violation report was filed in 2006 making that allegation, your honor. But if the court looks at excerpt of record page 19, in comparison to the other probation violations, it's not entirely clear that Mr. Sharp either admitted those, every one of those allegations, or that he was found guilty of all of them. I will, and I would note that he was only in custody for two months before he was returned to a release status, which suggests that the parole commission did not treat it as extremely serious. But one of the underage persons was the same individual who was the victim in the prior offense, right? That was an allegation, your honor. It's not clear whether he admitted that. And I can tell the court as an officer of the court that I've reviewed those parole documents, and I know the answer. But it's not part of this record, so I don't want to say unless I'm asked. Your honors, I do want to say that having now read the case of United States v. Saturn, we took the position that there was a violation of Rule 32 by the district court based on the district court's failure to resolve the dispute that we claim arose when we objected to the court's consideration of the alleged violations of pre-sentence release. Saturn says that only disputed facts affecting the temporal length of a prison sentence implicate Rule 32 I.3.B. So I want to say that I think a better way of framing that argument would have been to say that the pre-sentence allegations that he violated bore insufficient indicial reliability for the district court to use them as the basis for crafting and imposing these very stringent conditions. There are a lot of issues before the court in terms of your client's failure to comply with prior conditions. So we give a lot of leeway to the district court in looking at the individual and trying to fashion conditions that might help with compliance. So why don't we just defer to the district court who had the person before him and could look at the demeanor and look at the entire history of the case? Your Honor, to answer your question, my answer is that there simply wasn't sufficient proof based on that violation behavior that Mr. Sharpe presented an ongoing risk of committing future sexual offenses or a danger to minors. And I would direct the court to the U.S. v. TM case where the court talked about the fact that because of the remoteness of the original sex offense and, well, primarily because of the remoteness of that offense, it was no longer reasonable to impose sex offender conditions of release at the time of sentencing. That might be true if there were no intervening history of noncompliance or involvement with the underage, inappropriate involvement with underage kids. In TM, there was intervening violation behavior, Your Honor. But what the court said in that decision was the intervening behavior can revive the concern from old offenses, but before you can impose sex offender conditions, those intervening violations have to suggest that it's related to a sex offense. It has to raise a concern about sex offense. That's correct. What did the district judge – now, you objected to these conditions, right? Yes, Your Honor, both in writing and orally. And did the district court respond at all to your objections? The district court – not at no. I have to say no. I think the district court – most importantly, there was some commentary by the district court justifying its decision, but it provided no explanation for why Mr. Sharp should be prohibited from associating with his then-wife and hopefully soon-to-be-wife again. And so the district court simply didn't address that whatsoever. And the court in Apulu, I think, made it clear that it was required to. There needed to be an individualized determination because it implicated a particularly significant liberty interest. All right. All right. That brings us to the other – I think a separate objection, which I'd like you to get to before your time's up. Yes, Your Honor. But, you know, Abbott is not associating with felons, ex-felons, without any exception for his spouse, right? That's correct, Your Honor. That's a separate objection. It is. And for that objection, our position is both that it was procedurally erroneous and substantively erroneous for the district court to impose that. Well, did the district court say anything about that objection? All the district court did was say, how old are her children? And, of course, there was already the imposed condition that he not be around children. So there was no – the court did not address the objection, at least on this record, Your Honors. So what do you suppose – well, I mean, what was the district court getting at, trying to enforce the, you know, the keep-away part of the order as far as, you know, minors are concerned? I think the district court simply presumed because of the violation behavior that that amounted to enough to impose sex offender conditions of release and that it justified because she had children that it justified independently him not being around her. But I don't think that's sufficient under this Court's decision in Apulu. With that, unless there's other questions, I'd like to reserve some rebuttal. You may do that. Thank you very much. Thank you. May it please the Court? My name is Christian Asker. I represent the United States. I think all these arguments are predicated upon whether there was sufficient evidence for the district court to consider whether the defendant had violated the conditions of his pretrial release. When you look at the initial PSR, the defendant objected to the specific conditions of release, and then two days after he filed his written objections to those conditions, the probation department came out with an addendum. And that addendum is found on Bates No. 27. And the probation officer found that while on pretrial release for the instant offense, the defendant married Debbie Brandenburg, who has minor children, and is currently on felony community supervision. The defendant did not notify his supervising officer of such, and he failed to register at the new address with the State of Idaho. The defendant's continued violation of behavior while on supervision and the unauthorized contact with children require special conditions to protect the public. Instead of objecting to that addendum, the defendant entered into a stipulation, agreeing to a sentence above the guidelines of 42 months. But objecting to the conditions, though, that were imposed, you're not suggesting, are you, that the defendant waived his right to object to the conditions imposed? No, Your Honor. He clearly objected to the conditions. But as to the issue of whether he objected to the court considering the nature of the alleged violations, I think that answer is found in sentencing. Well, that may be a response to the procedural question, but it isn't really a response to the substantive question of reasonableness. And I'd appreciate your telling us how this case, in your view, is different from TM, is different from Rudd, where we said that there had to be a connection between the sex offender treatment condition and the specific facts of the case. Well, I think that's where the nature of the alleged violations come in. The district court found that the conditions, the major justification for the sentence is the defendant's background and history regarding failure to comply with supervised release conditions in the party's agreement. But failure to comply with previous supervised release conditions doesn't necessarily, I guess maybe this is my question, in your view, does that all by itself justify any conditions that the court may wish to impose? Well, I think the court is tasked with looking at the totality of the circumstances. And in Mr. Sharff's particular circumstance, what I believe was troubling to the district court is that you had an individual who had a serious sex offense in 98. He had shown over a prolonged period of time up until and through this case of an unwillingness to abide by conditions of other... But unwillingness to abide by various conditions does not necessarily equate to a propensity to commit another sex offense. For example, suppose somebody just hates reporting his address, and he's never touched anybody in 15 years, but he hates reporting his address. And he has to do that, so he's violating over and over again. But does any violation count in your view? No. And I think that's why you go back to the nature of the alleged violations where he was residing with two juvenile females. This is someone who his original sex offense had to do with underage juvenile females of approximately the same age as Ms. Brandenburg's two children. Now, there was never a suggestion that there was improper contact between Sharff and those Ms. Brandenburg's children. But when viewed through the lens of his continued disregard, whether that's to register as a sex offender or whether that's to avoid living with convicted felons or young children, the district court does have a wide latitude to come up with, after looking at the totality of the circumstances, what's appropriate to protect the public, to deter Mr. Sharff, and to rehabilitate him. And the specific conditions that the district court imposed goes to all three of those things. The district court – and so I guess that's why initially I stated – the first question is whether the district court correctly considered the nature of the alleged violations while in his unsupervised release. Well, I appreciate your explanation, but the problem is the district court really didn't articulate the basis for his decision the way you are, right? Well, on Bates page 48. 48? Correct. Go ahead. He said that I find that the government has met its burden of proving that the particular conditions of supervised release involve no greater deprivation of liberty than required. That's a conclusion. The defendant's criminal history includes a serious sex offense, as well as multiple failures and revocations of probation and parole. That he violated his conditions of release by living with a woman who has two children under the age of 18 shows that more serious conditions are required for further supervised release, including the broader condition that he had. No, but all that hangs on, you know, as far as the conditions, you know, treatment for sexual deviancy and things like that, they all hinge on this 12-year-old conviction, right? No, I think he said he detailed, as did the government at sentencing, the history of Mr. Sharp and how it was not that he was convicted. But what history, you know, indicates that this deviant sexual behavior will be repeated 10 years later? I mean, you're rationalizing to say, well, okay, I'm going to impose a drug condition because it's better for, you know, people on supervised release not to take drugs, right? True. You know, it would authorize anything. My arguments on page 48 to the court, I asked the court to look to the underlying offense in this case where he had manital to genital, genital to genital contact with a 9-year-old and a 7-year-old, one of which was his daughter, and was convicted of battery with intent to commit a serious felony, and then he violated his probation numerous times. I asked the district court to look at the type of the violations that he had on the underlying probation and that they're very similar in nature in the way that he committed this offense as well as the violating the condition. Well, similar but not similar in terms of sexual offense. That is correct. So when we're looking only at the question that Judge Tashima is asking you, which is the sex offender treatment, it has to be more than just any criminal activity. Correct. And while there wasn't any repeated sexual offense, I think what the district court found troubling is that Mr. Sharp continued to put himself in a position where he would have access to young juvenile females. And given the latitude that the district court has, he determined that those recent violations of the supervised release weren't But that justifies the no contact with minors piece, which he just said. But how does it justify the sexual deviancy evaluation? Just a moment, Your Honor. Your Honor, the conditions, the condition was simply to have an evaluation, was my understanding. So at the direction of his probation officer, he was to have an evaluation for sexual deviancy by a qualified mental health professional. And so I think that there were enough red flags for the district court to say, looking at the last decade of Mr. Sharp, it would be a good idea for him to get an evaluation. And I would urge this court to find that that was within the district. Well, I'm looking at page 57, and I'm looking towards the end of the page. There is one section that requires the evaluation, and that's what you're referring to. But this next paragraph refers to completing a course of treatment, including treatment for sexual deviancy. Well, I think the district court was simply saying that he had to complete any course of treatment at the direction of his probation officer that may include that. So that could include other things. You're saying that's a more generic? That's how I read it, Your Honor. Okay. I have just a few seconds left. Are there any further questions? I don't believe so. Thank you very much for your argument, Mr. Monahan. Counsel, could you bring page 57 with you when you come? Do you have that? You bet I will. Okay. Just for my edification, looking at page 57, would you please specify for us precisely which conditions you challenge? Yes, Your Honor. The one that says the defendant may not have direct or indirect contact with children under the age of 18. Okay. That's approved in advance. Correct. The defendant will not reside or loiter. Okay. And there's no exception for that. I would note, per Blinkensop, that was something that concerned the court in Blinkensop, where the defendant had been convicted of a child porn offense. And third, the defendant may not engage in any occupation that would expose him directly or indirectly to minors. But the probation officer could approve it. That's true. With the first and the last, there was the ability of the probation officer to give approval. I agree. Okay. Then the next two, skip the next two, and then the following three. Even the polygraph? Your Honor, we only objected to the polygraph as it applied to monitoring treatment. And I was going to suggest that that could be left in place and would be a powerful tool to address many of these concerns. And in Weber, this court talked about the need when dealing with great deprivations of liberty to consider alternatives. And we're suggesting that the polygraph is an alternative the court can use to ask him periodically or his PO to ask him periodically, are you complying? Are you committing federal, state, or local crimes? Are you having sexual contact with children? So we would withdraw our objection to that particular condition to the extent it would apply to general conditions of supervision. If I could just take a moment to. Well, the other one was a standard condition, which is not to associate with felons, right? Isn't that a standard condition? That's correct. But Napulu didn't say that it only matters whether it's a special condition. Right. Napulu said you've got to look at whether it implicates in a particularly significant liberty interest. But standard conditions are generally more difficult to challenge than the special conditions that are. The court doesn't have to articulate its reasoning as much. But if I could just take one moment. I know I'm over time. That's all right. I took you past it, so. Thank you so much. I just want to say that I think it's important to note that this case is stronger than TM. We don't have the same remoteness that was at stake in TM between the sex offense and the time at sentencing. But it's very important to note that unlike TM, Mr. Sharpen undergone significant rehabilitative measures. He obtained a psychological evaluation in 2000 that said he was a low to moderate risk to reoffend sexually, cognitive therapy, substance abuse treatment. But most importantly, it's undisputed, he had successfully completed sex offender treatment already. And the district court never explained why he would need to go through that again. The district court simply failed to articulate any nexus between the two. Well, he doesn't say he necessarily has to go through it again. He says he has to be evaluated. But if his PO says you've got to go through it, then he has to if you read the next condition. Right. If. Presumably it would relate to the evaluation. And if the evaluation said there's no need. But the evaluation itself has been recognized as pretty intrusive in and of itself. You're required to talk about very private. It's very intrusive. It asks you about your innermost thoughts. And then under the way this is written, he could be required to do treatment that would include a penile plesiograph, not just talking about his sex offenses. He could be required as written to put a device on his body that was found in Weber to require an individualized determination before that can be required. And I see nothing in this that would prevent the PO from saying I read your evaluation. Do the treatment. And if they say put this device on your body, he's in violation if he says no. Could you go back to the judge and challenge that you think at that point if the evaluation showed if the probation officer as a result of the evaluation required that? Could you go back to the judge at that point? This court in Weber said that requiring us to do that shifts the burden to us rather than the government to justify at the outset the need for that invasive condition. That doesn't really answer Judge Rawlinson's question. Her question, I think, was would you be able to go back and make that argument at that time? I don't think we would. Yes, the answer is yes. But I think the problem is then we'd be having to go up an uphill battle, whereas, again, the Weber court said that burden can't be shifted to us. The government has it at the outset of its sentencing. Thank you, counsel. We appreciate the very helpful arguments of both counsel. The case just argued is submitted.
judges: Tashima, Graber, Rawlinson